239 N.J. Super. 276 (1990)
571 A.2d 300
ATLANTIC EMPLOYERS INSURANCE COMPANY, PLAINTIFF-RESPONDENT,
v.
TOTS & TODDLERS PRE-SCHOOL DAY CARE CENTER, INC., RLN, INC., T/A TOTS & TODDLERS LEARNING CENTER, ROBERT KNIGHTON, NANCY KNIGHTON, DYFS AND JEFFREY DENBO, DEFENDANTS-RESPONDENTS, AND R.S., INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR K.S., JR. AND S.S., MINORS, INDIVIDUALLY, JOINTLY AND SEVERALLY AND K.S., SR., INDIVIDUALLY; J.C., INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR J.W.C., MINOR, INDIVIDUALLY AND M.C., INDIVIDUALLY; T.B., INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR M.B., MINOR, INDIVIDUALLY, AND C.B., INDIVIDUALLY; C.G., INDIVIDUALLY AND AS GUARDIAN AD LITEM FOR A.G., MINOR, INDIVIDUALLY, AND T.G., INDIVIDUALLY, INTERVENORS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted January 24, 1990.
Decided March 2, 1990.
*278 Before Judges DREIER, SCALERA and D'ANNUNZIO.
John W. Trimble, attorney for appellants (John W. Trimble, on the brief).
Parker, McCay and Criscuolo attorneys for respondent, Atlantic Employers Ins. Co. (Stacy L. Moore, Jr., of counsel, Richard M. Berman, on the brief).
No brief was filed on behalf of defendants-respondents.
The opinion of the court was delivered by SCALERA, J.A.D.
This is an action for declaratory judgment by Atlantic Employers Insurance Company (Atlantic), the insurance carrier for RLN, Inc., trading as Tots & Toddlers Day Care Center (Tots & Toddlers) and Robert Knighton and Nancy Knighton, his wife, as "owners" thereof.
The appellants, as proposed intervenors, are the various children who were allegedly sexually abused while attending the insured day care center and their parents. The parents have collectively filed two personal injury suits alleging specifically that Robert Knighton sexually abused their children while they were attending the day care center and that Nancy Knighton and the corporation were negligent in allowing it to happen. *279 Their suits assert causes of action for negligence and intentional tort.[1]
Atlantic sought a declaration in this suit that, under the insurance policy issued by it to Tots and Toddlers and Robert and Nancy Knighton, it did not have to provide a defense for the other complaints filed by appellants or indemnify for any consequent judgments.
Appellants filed a timely motion to intervene in this suit, and Atlantic filed a motion for summary judgment, both of which were heard together. The defendants, as named insureds, apparently felt themselves to be judgment-proof and did not bother to answer this complaint. The trial judge denied appellants the right to intervene based on his reasoning that the insurance policy issued by Atlantic was a contract for indemnification rather than one in which appellants could be considered as third-party beneficiaries. However, he did permit appellants to argue fully the merits of Atlantic's summary judgment motion which he ultimately granted. Both of these determinations are the subject of this appeal.
Appellants assert that they should have been permitted to intervene concerning the liability coverage question raised by Atlantic. Also, they claim that disposition by way of summary judgment in favor of Atlantic was inappropriate here since Atlantic has an obligation to provide a defense to the defendants and indemnify them for any judgments obtained in their underlying suits.
R. 4:33-1 deals with intervention of right and provides that:
Upon timely application anyone shall be permitted to intervene in an action if the applicant claims an interest relating to the property or transaction which is *280 the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by the existing parties.
Where intervention of right is not allowed, one may obtain permissive intervention under R. 4:33-2:
Upon timely application anyone may be permitted to intervene in an action if his claim or defense and the main action have a question of law and fact in common.... In exercising its discretion the court shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties.
We believe that the trial court's denial of appellants' motion to intervene was erroneous under either rule. The rule respecting intervention as of right should be liberally construed. State v. Lanza, 39 N.J. 595, 600, 190 A.2d 374 (1963), cert. den., 375 U.S. 451, 84 S.Ct. 525, 11 L.Ed.2d 477 (1964); Zanin v. Iacono, 198 N.J. Super. 490, 495, 487 A.2d 780 (Law Div. 1984). "The test is `whether the granting of the motion will unduly delay or prejudice the rights of the original parties.'" Looman Realty Corp. v. Broad St. Nat. Bk. of Trenton, 74 N.J. Super. 71, 78, 180 A.2d 524 (App.Div. 1962), cert. den., 37 N.J. 520, 181 A.2d 782 (1962). The motion to intervene was timely filed here and no such harm would have resulted by permitting the appellants to intervene.
R. 4:33-1 simply requires the applicant to claim "an interest" relating to the property or transaction which is the subject of the action. Here, the appellants clearly have such an interest in the insurance "transaction" between Atlantic and the named defendants, as insureds. Cf. N.J.S.A. 17:28-2; In re Estate of Gardinier, 40 N.J. 261, 265, 191 A.2d 294 (1963). Moreover, under R. 4:33-1, an applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede his ability to protect that interest. Here a ruling in favor of Atlantic probably would render any judgment entered in favor of the appellants in the other litigation uncollectable. Finally, Atlantic's suit was not otherwise opposed and appellants' interests thereby were not adequately represented.
*281 We do note, however, that for the purpose of this appeal the trial judge's error in denying intervention was not overly prejudicial. R. 2:10-2. He did allow appellants to argue fully at the summary judgment hearing just as if they formally had been granted permission to intervene, and gave full consideration to their arguments. However, since we are remanding this matter for further proceedings on the substantive issue, we feel constrained to reverse the denial of applicants' motion to intervene and order their entry as such.
Directing our attention to the merits of the summary judgment, appellants argue that it was erroneously granted because there remains a genuine issue of material fact concerning the "intent" of the defendants to inflict injury on the children which would fall without the exclusionary language of the policy.
The insurance policy issued by Atlantic provides:
LIABILITY CLAIMS WE WILL COVER
If you or another insured has a legal responsibility to pay a claim someone made based on bodily injury, personal injury, or property damage, resulting from an occurrence, we will pay that claim if it is covered under this policy.
An occurrence,
means an accident, including continuous or repeated exposure to the same event, that results, during the policy, in loss or damage to your property, or in bodily injury, personal injury, or property damage. Such injury or damage must be neither expected nor intended by the insured.
However, the policy specifically excludes coverage for personal injury that results from,
Any violation of a penal statute or ordinance committed by an insured or with your knowledge or consent;
In Lyons v. Hartford Ins. Group, 125 N.J. Super. 239, 310 A.2d 485 (App.Div. 1973), certif. den., 64 N.J. 322, 315 A.2d 411 (1974), we recognized that coverage does exist under such an exclusion "for the unintended results of an intentional act, but not for damages assessed because of an injury intended to be inflicted." Id. at 245, 310 A.2d 485. Several years later in Ambassador Insurance Company v. Montes, 76 N.J. 477, 489, 388 A.2d 603 (1978), the Supreme Court of New Jersey adopted the general rule as set forth by the Lyons court.
*282 There seems to be no dispute that if, as alleged, Robert Knighton sexually molested the children, then he had the requisite level of intent to be found guilty of sexual molestation, based on the criminal statutes of this State. But appellants insist that this does not necessarily mean that he intended the damages or injuries incurred by the children as a result of such actions. While socially unacceptable, they argue a pedophile or other sexual deviant may not necessarily intend to cause his or her victims any injury even though that behavior may constitute criminal activity. Further, they insist that the existence of such intent cannot automatically be imputed to the other insureds under the policy so as to exclude coverage. Thus, they conclude, while intent may be found to exist for statutory purposes, that element, with regard to the infliction of the injuries for purposes of policy coverage, is open to factual dispute. Finally, they contend simply that coverage cannot be excluded because it would contravene public policy. We reject this position.
While we find no New Jersey cases directly on point, in Fireman's Fund Ins. Co. v. Hill, 314 N.W.2d 834 (Minn. 1982), the Supreme Court of Minnesota, in construing a similar exclusion in a homeowner's policy, held that an intention to cause injury will be inferred as a matter of law when a foster custodial parent engages in sexual activity with a child in his custody. Id. at 835. As a result, such acts were excluded from coverage under the homeowner's policy there under review. This rationale was followed in Illinois Farmers Ins. Co. v. Judith G., 379 N.W.2d 638 (Minn.App. 1986); Horace Mann Ins. Co. v. Ind. Sch. Dist., 355 N.W.2d 413 (Minn. 1984); and Mutual Service Cas. Ins. Co. v. Puhl, 354 N.W.2d 900 (Minn.App. 1984).
This same result was also reached by the Supreme Court of New Hampshire in Vermont Mut. Ins. Co. v. Malcolm, 128 N.H. 521, 517 A.2d 800 (N.H. 1986). In Malcolm, the policy definition of occurrence was similar to the one in the case at hand. The court focused on the definition of "accident" as a *283 cause of the injury, as distinct form the injury itself, and held that the causes of the boy's injuries were not accidental. It found that the nature of a sexual assault to be inherently injurious and could not be treated as an accidental cause of injury under the insurance policy. Id. at 802-803.
Finally, we note that the highest courts of Arkansas and Washington have applied such an objective test in also denying insurance coverage in molestation cases. See C.N.A. Insurance Company v. McGinnis, 282 Ark. 90, 666 S.W.2d 689 (Ark. 1984); Rodriguez v. Williams, 107 Wash.2d 381, 729 P.2d 627 (Wash. 1986). Cf. State Auto Mut. Ins. Co. v. McIntyre, 652 F. Supp. 1177, 1187-1189 (N.D.Ala. 1987), where the court applied a subjective test to determine whether or not the insured "expected" bodily injury to result from an intended act.
Appellants cite State Farm Fire and Cas. Co. v. Estate of Jenner, 856 F.2d 1359 (9th Cir.1988), in which two doctors testified that pedophiles consider sexual contact to be part of a caring relationship and do not intend to harm their victims. That court concluded that dismissal of the case by way of summary judgment was inappropriate because there was credible evidence in the record that the sex offender may not have intended to harm his victim.
As a matter of public policy and logic we conclude that the better rule warrants application of the objective approach. A subjective test suggests that it is possible to molest a child and not cause some kind of injury, an unacceptable conclusion. Certainly, one would and should expect some physical or psychological injury or both, to result from such acts. (We do not consider here the exception, where the accused might be mentally incapacitated). Furthermore, under Atlantic's policy, not only must the injury be unintended, but it must also be unexpected and it specifically excludes coverage for claims that result from "any violation of a penal statute or ordinance committed by an insured or with [the] knowledge or consent" of any insured.
*284 So viewed, the policy coverage with respect to Robert Knighton is clearly barred and summary judgment was correctly granted as to him. It is simply against public policy to indemnify a person for a loss incurred as a result of his own willful wrongdoing. Zuckerman v. Nat. Union Fire Ins., 100 N.J. 304, 320, 495 A.2d 395 (1985); Ambassador Ins. Co. v. Montes, 76 N.J. 477, 482-483, 388 A.2d 603 (1978); Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 398, 267 A.2d 7 (1970); Ruvolo v. American Cas. Co., 39 N.J. 490, 496, 189 A.2d 204 (1963).
Appellants reliance on Malanga v. Manufacturers Cas. Ins. Co., 28 N.J. 220, 225, 146 A.2d 105 (1958), is misplaced. That court held there that "the public policy which lies behind the exclusionary clause is not applicable where liability is imposed upon an insured for an assault and battery in which he himself took no part in." Id., 28 N.J. 225, 146 A.2d 105. Coverage was afforded in that case because there was no evidence that the partners, acting together, had adopted a policy directing each partner or its agents to carry out their objectives in such a way as to involve the commission of an assault or battery upon a third person. Nor was there any evidence that the members of the partnership authorized or had knowledge of the wrongful act in question.
The allegations against the other two defendants require a different approach. The facts presented here are insufficient to determine if Nancy Knighton and Tots & Toddlers, the corporation, should also be excluded from coverage. While Robert Knighton is excluded from coverage, Nancy Knighton and the corporation may indeed have a right to coverage, irrespective of Robert's intentional acts. The complaints assert that Nancy Knighton and Tots & Toddlers were negligent, based on their alleged failure to supervise staff and pupils adequately. If either or both were negligent in not reasonably conducting the day care center so as to prevent causing injury to the children, coverage might well be afforded under the *285 policy. Burd v. Sussex Mutual Insurance Company, 56 N.J. 383, 267 A.2d 7 (1970). Likewise, they might be denied coverage under the policy exclusion relating to violations of penal statutes if they participated in, condoned or had knowledge of the illegal activity. But in any event the corporation, as such, may have had a duty to set standards of surveillance or supervision, which duty was negligently discharged. On the basis of the summary judgment record, the trial judge could not have made such findings and these matters should have been reserved for the trier of facts.
In sum, that part of the order granting summary judgment to Nancy Knighton and the corporation is reversed and the matter remanded for a proper determination of these issues in a plenary proceeding. However, that portion of the trial court's ruling denying coverage for Robert Knighton is affirmed.
NOTES
[1] In October of 1988, after a pretrial hearing, these underlying suits were dismissed entirely and that dismissal is on appeal before us simultaneously herewith as A-3143-88T2. There is a separate cause of action against the New Jersey Department of Youth and Family Services (DYFS) and Jeffrey Denbo, an employee of DYFS for libel and negligence in their investigation of complaints regarding child abuse which is not implicated here.