# United States Court of Appeals for the Federal Circuit

03-1541, 04-1137, -1213

EVIDENT CORPORATION,

> Plaintiff/Counterclaim Defendant-
> Appellant,

and

PEROXYDENT GROUP,

> Counterclaim Defendant-Appellant,

v.

CHURCH & DWIGHT CO., INC.,

> Defendant/Counterclaimant-Appellee,

and

COLGATE-PALMOLIVE CO., INC.,

> Defendant/Counterclaimant.

Victor M. Wigman, Blank Rome LLP, of Washington, DC, argued for plaintiff counterclaim defendant-appellant and counterclaim defendant-appellant. With him on the brief was Denise C. Lane-White.

Thomas C. Morrison, Patterson, Belknap, Webb & Tyler LLP, of New York, New York, argued for defendant/counterclaimant-appellee. With him on the brief was Scott B. Howard.

Appealed from: United States District Court for the District of New Jersey

Judge Mary Little Cooper

# United States Court of Appeals for the Federal Circuit

03-1541, 04-1137, -1213


EVIDENT CORPORATION,

     Plaintiff/Counterclaim Defendant-
     Appellant,

and

PEROXYDENT GROUP,

     Counterclaim Defendant-Appellant,

v.

CHURCH & DWIGHT CO., INC.,

     Defendant/Counterclaimant-Appellee,

and

COLGATE-PALMOLIVE CO., INC.,

     Defendant/Counterclaimant.

_____

DECIDED:  February 22, 2005
_____


Before LOURIE, SCHALL, and LINN, Circuit Judges.

LOURIE, Circuit Judge.

Evident Corporation and Peroxydent Group appeal from the decision of the United States District Court for the District of New Jersey granting Church & Dwight's motion for attorney fees pursuant to 35 U.S.C. § 285. Evident Corp. v. Church & Dwight Co., Inc., No. 97-3275 (D.N.J. June 30, 2003) ("Attorney Fee Opinion"). They also

challenge the district court's jurisdiction on the ground that Evident lacked standing to bring the suit. Because the district court had jurisdiction over the suit and did not abuse its discretion by holding Evident and Peroxydent jointly and severally liable for the attorney fee award, we affirm.

## BACKGROUND

In September 1983, Jerome Rudy, Melvin Denholtz, and Jeffrey Denholtz filed a patent application covering toothpaste formulations. During the course of the prosecution of the application, they filed a continuation-in-part ("CIP") application and abandoned the original application in April 1985. In May 1986, the three inventors joined Peter Bohm, Steele Elmi, and Myron Barchas to form Peroxydent Group, a partnership created under New Jersey state law. In April 1988, the inventors assigned to Peroxydent all rights to patents issuing from the CIP. In May 1990, Melvin Denholtz, Jeffrey Denholtz, and Peter Bohm formed Evident Corporation under New Jersey corporation law, and in August 1990, Peroxydent licensed to Evident certain rights under any patents that might issue from the pending CIP. Specifically, Peroxydent granted Evident the right to make, have made, use, and sell dentifrice compositions for human oral use and the right to grant sublicenses. Peroxydent did, however, reserve a right of first refusal to bring suit against any infringing parties. In November 1990, the United States Patent and Trademark Office ("PTO") issued the CIP as U.S. Patent 4,971,782.

In June 1997, Evident sued Church & Dwight and Colgate-Palmolive for infringement of the '782 patent. Church & Dwight and Colgate-Palmolive answered and filed a declaratory judgment counterclaim alleging invalidity and noninfringement of the

'782 patent, joining Peroxydent as a third-party defendant. In addition, they sought a declaration that the patent was unenforceable due to inequitable conduct.

The district court held a three-day bench trial and, in a September 2002 decision, determined that the inventors had been aware of three material references and withheld them from the PTO with intent to deceive. As a result, the court held that the '782 patent was unenforceable due to inequitable conduct. Evident and Peroxydent appealed from the unenforceability decision of the district court, challenging the court's holding of inequitable conduct. We affirmed the district court's ruling without opinion in October 2003. Evident Corp. v. Church & Dwight Co., Inc., 78 Fed. Appx. 113 (Fed. Cir. Oct. 9, 2003).

Meanwhile, during the pendency of that first appeal, Church & Dwight filed a motion for attorney fees and expenses totaling nearly $1.3 million, arguing that the case was exceptional. In June 2003, the district court decided that the case was indeed exceptional and awarded Church & Dwight nearly all of the requested attorney fees. Attorney Fee Opinion, slip op. at 7, 26. Evident and Peroxydent timely appealed.[1] We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

DISCUSSION

A.    Standing

On appeal, Peroxydent argues that Evident lacked standing to bring the original lawsuit against Church & Dwight and Colgate-Palmolive. It contends that Evident was a

---

[1]    While both Evident and Peroxydent appear to be appellants, it is only Peroxydent's liability for attorney fees that seems to be at issue in this appeal.

03-1541, 04-1137, -1213                    3

mere licensee lacking all substantial rights in the patent and therefore did not have standing to sue under the patent. Peroxydent also claims that it was simply a passive third-party counterclaim defendant without an interest in the litigation. Moreover, it asserts that its presence in the lawsuit as a third-party defendant was not sufficient to cure the defect in standing. As a result, it argues, the district court did not have subject matter jurisdiction. In effect, Evident and Peroxydent, being on the losing side of both their own patent infringement claim and an opposing claim for attorney fees, now appear to seek escape from the judgment by arguing that Evident lacked standing in the first place and that the original lawsuit was improperly filed.

Church & Dwight responds by arguing that constitutional and prudential standing requirements were met because Evident had sufficient rights to bring suit in its own name. Additionally, it asserts that any deficiency in standing that might have existed when the suit was filed was cured when Peroxydent was joined as a third-party defendant. It argues that, regardless of any alleged defect in Evident's standing, Church & Dwight itself had proper standing to bring its declaratory judgment counterclaim and that it did so properly against both Evident and Peroxydent.

We review questions of law, including whether a party has standing to sue, without deference. Prima Tek II, L.L.C. v. A-Roo Co., 222 F.3d 1372, 1376 (Fed. Cir. 2000). While Peroxydent's standing argument was not raised below, the issue has been raised on appeal and it must be addressed here because it is jurisdictional. See Mentor H/S, Inc. v. Medical Device Alliance, Inc., 240 F.3d 1016, 1018-19 (Fed. Cir. 2001) (stating that the issue whether an exclusive licensee lacked standing is jurisdictional and is not waived by a party's failure to raise the issue in the district court).

"The doctrine of standing limits federal judicial power and has both constitutional and prudential components." Media Techs. Licensing, LLC. v. Upper Deck Co., 334 F.3d 1366, 1369 (Fed. Cir. 2001). Constitutional standing requires only that a plaintiff must have suffered an injury in fact, that there be a causal connection between the injury and a defendant's conduct, and that the injury be redressable by a favorable court decision. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Here, there can be no dispute that Evident had constitutional standing to bring its suit. Evident had certain significant rights to the patent, in particular, the right to make, use, and sell the patented dentifrice composition for human oral use, as well as the right to grant sublicenses. Thus, it would be injured by any party that made, used, or sold that patented composition. Clearly, Evident, as exclusive licensee to the '782 patent, had constitutional standing to sue under the patent. The major issue in this case is thus whether prudential standing requirements were satisfied by the presence of Peroxydent, the patentee, only as a third-party defendant.

We have held that "a patentee should be joined, either voluntarily or involuntarily, in any infringement suit brought by an exclusive licensee," a general rule that is "prudential rather than constitutional in nature." Prima Tek II, 222 F.3d at 1377. In Independent Wireless Telephone Co. v. Radio Corp. of America, 269 U.S. 459, 468 (1926), the Supreme Court stated that in a patent infringement suit brought by an exclusive licensee, "[t]he presence of the owner of the patent as a party is indispensable . . . to give jurisdiction under the patent laws . . . ." However, the policy concerns motivating the need for a patent owner to be joined in an infringement suit with its licensee—principally, from the standpoint of an accused infringer, avoidance of multiple

lawsuits and liabilities, and, from the standpoint of the patentee, ensuring that its patent is not invalidated or held unenforceable without its participation—are surely met here by Peroxydent having been joined as a third-party defendant.

The typical challenge to prudential standing in a patent infringement case occurs when an alleged infringing party asserts that the plaintiff, a licensee with rights to or under the asserted patent, lacked standing to bring the original lawsuit because the patent owner was not a party to the suit. This is not such a case. Here, the underlying infringement action involves the licensee suing alleged infringers, and the patent owner being brought into the suit by the alleged infringers' counterclaim. The objection to standing, tardy though it was—raised now for the first time after seven years of litigation and a prior appeal to this court—was made by Peroxydent, the patent owner, not by an accused infringer. Nonetheless, regardless whether Peroxydent was brought into the suit by the accused or the licensee, there is no standing problem.

As indicated, Peroxydent was brought in from the start of the litigation through the defendants' counterclaim. Thus, both the patent owner, Peroxydent, and the licensee, Evident, were clearly parties to the lawsuit, and Peroxydent participated throughout the duration of the lawsuit. Moreover, it was beneficial that Church & Dwight's counterclaim joined Peroxydent as a third-party defendant because it ensured that all entities with an interest in the asserted patent were part of the lawsuit. After having been sued by Evident, Church & Dwight reasonably chose to join Peroxydent as a third party and file a counterclaim against both Evident and Peroxydent seeking a declaratory judgment that the '782 patent was not infringed, invalid, and unenforceable. Although Peroxydent asserts that it had no stake in the litigation, the fact that its patent

was in jeopardy in the litigation certainly would have affected Peroxydent's interest. As a result, Peroxydent, properly joined in the counterclaim, cannot fairly argue that it had no interest in the litigation. Furthermore, Peroxydent's presence precludes Church & Dwight from being subject to a separate lawsuit even if it was not liable to Evident. Under these circumstances, there can be no lack of prudential standing in the original patent infringement lawsuit.

Accordingly, we conclude that Peroxydent's presence in the litigation as a third-party defendant fully satisfied any standing requirements.

B.    Exceptional Case, Attorney Fees, and Joint and Several Liability

Evident and Peroxydent next assert that the district court committed error by finding that the case was exceptional, and they argue that the court abused its discretion by awarding attorney fees to Church & Dwight.[2]  Furthermore, Peroxydent argues that the court erred when it chose not to apportion the attorney fee award between Evident and Peroxydent and instead imposed joint and several liability. Peroxydent maintains that the activities on which the inequitable conduct finding was based were largely the work of Evident and the inventors and are not fairly attributable to Peroxydent, the partnership. Church & Dwight responds by arguing that the court properly decided that the case was exceptional in light of the inequitable conduct and

---

[2]    Peroxydent also claims to have questioned whether expert witness fees, as decided by the district court, are properly allowable with an award of attorney fees in light of our decision in Amsted Industries, Inc. v. Buckeye Steel Castings Co., 23 F.3d 374 (Fed. Cir. 1994).  However, in its opening brief, it failed to raise the issue with particularity, instead mentioning it in only a few short words. Only later in its reply brief did Peroxydent specifically cite Amsted and argue that the district court committed error by awarding expert witness fees.  Because the issue was not properly raised in Peroxydent's initial brief so that Church & Dwight could respond fully, we consider the issue waived.

03-1541, 04-1137, -1213                    7

that the award of attorney fees was reasonable. It maintains that Peroxydent participated throughout the case and cannot now claim that it is merely an innocent bystander to the litigation. It also argues that Peroxydent was the owner of the '782 patent and is thus accountable for any inequitable conduct before the PTO. Church & Dwight asserts that in view of those facts, the district court did not abuse its discretion in awarding attorney fees or in making Evident and Peroxydent jointly and severally liable.

A court may award attorney fees to a party in "exceptional" cases pursuant to 35 U.S.C. § 285. A trial court undertakes a two-step inquiry when adjudicating a request for attorney fees. The court examines first whether there is clear and convincing evidence that the case is exceptional, and second, whether an award of attorney fees to the prevailing party is warranted. Cybor Corp. v. FAS Techs., 138 F.3d 1448, 1460 (Fed. Cir. 1998) (en banc); J.P. Stevens Co. v. Lex Tex Ltd., 822 F.2d 1047, 1050 (Fed. Cir. 1987). Whether a case is exceptional depends on findings of fact best left to the trial court, which we consequently review for clear error. Rolls-Royce, Ltd. v. GTE Valeron Corp., 800 F.2d 1101, 1111 (Fed. Cir. 1986). The decision to award attorney fees is one committed to the discretion of the trial court, 35 U.S.C. § 285 (2000), and we thus review that decision for an abuse of discretion, Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995).

We agree with Church & Dwight that the district court did not clearly err in determining that the case was exceptional. We also determine that the district court properly exercised its discretion in awarding attorney fees and did not abuse that discretion by holding both Evident and Peroxydent jointly and severally liable. First, we have held that "[e]xceptional cases are normally those involving bad faith litigation or

those involving inequitable conduct by the patentee in procuring the patent." Brasseler, U.S.A. I, L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1380 (Fed. Cir. 2001). Peroxydent was the record owner of the patent application at issue during a significant period of time before it issued as the '782 patent. Under the regulations, inventors, patent owners, and attorneys associated with the filing or prosecution of a patent application have an affirmative and continuing duty to disclose material information to the PTO. See 37 C.F.R. § 1.56(c); see also Brasseler, 267 F.3d at 1383. Peroxydent was such a party and thus had the duty and the opportunity to disclose the relevant prior art to the PTO.

Secondly, the issue of the liability of Peroxydent, a partnership, for inequitable conduct must be considered. In that regard, New Jersey has adopted the Uniform Partnership Act, which provides that

> [a] partner's knowledge, notice, or receipt of a notification of a fact relating to the partnership is effective immediately as knowledge by, notice to, or receipt of, a notification by the partnership, except in the case of a fraud on the partnership committed by or with the consent of that partner.

N.J. Stat. § 42:1A-3 (2004). In Malanga v. Manufacturers Casualty Insurance Co., 146 A.2d 105 (N.J. 1958), the New Jersey Supreme Court considered the extent of liability of a partnership for the knowledge and acts of certain partners. The court supported "the common law principle of mutual agency that the partnership, or every member thereof, is liable for torts committed by one of the members acting in the scope of the firm business, although they do not participate in, or ratify, or have knowledge of such torts." Id. at 108 (citing Caplan v. Caplan, 268 N.Y. 445 (1935); 40 Am. Jur. Partnerships § 136). Additionally, the New Jersey state courts have held that:

> Knowledge by one partner with respect to any matter relating to a transaction within the ordinary scope of the partnership business is knowledge to all partners. Knowledge with respect to partnership property is imputable to the remaining partners regardless of the nature of the partnership. . . . This knowledge is imputable so long as the partner was acting within the scope of partnership affairs and within his authority.

Affiliated FM Ins. Co. v. Kushner Cos., 627 A.2d 710, 716 (N.J. Super. Ct. Law Div. 1993) (internal citations omitted). "Individual members of a partnership may even be held responsible for torts of which they have no knowledge, committed by any member of the firm in the course of partnership business." Id. at 717 (citation omitted). While inequitable conduct is not a tort, the principle of joint responsibility equally applies to Peroxydent and its partners. Because of the close, intertwined relationship between the Peroxydent partners, the Evident shareholders, and the inventors of the '782 patent, Peroxydent cannot be said to be innocent of the underlying inequitable conduct.

Finally, it is clear that Peroxydent was a party to the litigation almost from the beginning through joinder as a third party. Peroxydent shared counsel with Evident through all stages of the litigation, including the present appeal, and it appears that there is not a clear division between the arguments presented only by Peroxydent and those presented by Evident.

We therefore hold that the district court did not clearly err in finding the case exceptional under 35 U.S.C. § 285 and did not abuse its discretion in awarding attorney fees to Church & Dwight. Furthermore, the court did not abuse its discretion in making both Evident and Peroxydent jointly and severally liable for the attorney fee award. We have considered the parties' remaining arguments and find them unpersuasive.

03-1541, 04-1137, -1213          10

CONCLUSION

Because the district court had subject matter jurisdiction over the lawsuit and because the court did not abuse its discretion by holding Evident and Peroxydent jointly and severally liable for the attorney fee award, the judgment is

AFFIRMED.